# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

### Appeal Nos. 15-2009 and 15-2055

AQUA SHIELD,

Plaintiff-Cross Appellant

v.

INTERPOOL POOL COVER TEAM, ALUKOV HZ SPOL SRO,
ALUKOV SPOL SRO, POOL & SPA ENCLOSURES,

Defendants-Appellants

On Appeal from the United States District Court
for the District of Utah in Case No. 2:09-cv-00013, Judge Ted Stewart

## CORRECTED PRINCIPAL BRIEF OF APPELLANTS, INTERPOOL POOL COVER TEAM, ALUKOV HZ SPOL SRO, ALUKOV SPOL SRO, POOL & SPA ENCLOSURES

Gregory J. Coffey
COFFEY & ASSOCIATES
310 South Street
Morristown, New Jersey 07960
Phone: (973) 539-4500
Fax: (973) 539-4501

*Attorneys for Defendants-Appellants, Interpool Pool Cover Team, Alukov
HZ Spol, SRO, Alukov Spol, SRO, and Pool & Spa Enclosures*

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, Appellants, Inter Pool Cover Team, Alukov HZ Spol., S.R.O., Alukov Spol, S.R.O., and Pool & Spa Enclosures, LLC timely filed Certificates of Interest and provides that information as follows:

1.     The full name of every party or amicus represented in the case by me is:

Inter Pool Cover Team, Alukov HZ Spol., S.R.O., Alukov Spol, S.R.O., and Pool & Spa Enclosures, LLC.

2.     The name of the real parties in interest represented by me is:

None.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curie represented by me are:

None.

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

See the Addendum to Appellants' Certificate of Interest on the following page.

## ADDENDUM TO APPELLANTS' CERTIFICATE OF INTEREST

Counsel for Appellants, Inter Pool Cover Team, Alukov HZ Spol., S.R.O., Alukov Spol, S.R.O., and Pool & Spa Enclosures, LLC provide the following:

The names of all law firms and partners or associates that appeared for the parties now represented by me in the agency or that are expected to appear in this court are:

**COFFEY & ASSOCIATES:**

Gregory J. Coffey
Richard J. Dewland


**TRASK BRITT, PC:**

H. Dickson Burton
Brandon Meachem

Respectfully submitted,


By: */s/ Gregory J. Coffey*
Gregory J. Coffey
**COFFEY & ASSOCIATES**
310 South Street
Morristown, New Jersey 07960
(973) 539-4500 – Phone
(973) 539-4501 – Fax
gjc@coffeylaw.com - Email
Counsel for Appellants

# TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES** ........................................................................ v

**STATEMENT OF RELATED CASES AND PROCEEDINGS** .............. 1

**JURIDICTIONAL STATEMENT** ............................................................ 2

**STATEMENT OF THE ISSUES PRESENTED FOR APPEAL** ............. 3

**STATEMENT OF THE CASE** .................................................................... 4

**STATEMENT OF FACTS** ........................................................................... 7

**A. Elements of Aqua Shield's Damages Claims** ....................................... 11

**1. The District Court's Methodology in Establishing and Awarding a Reasonable Royalty** ..................................................................................... 11

**2. Aqua Shield's Refusal to Offer Aggregate Losses** .............................. 13

**3. Factors Considered Regarding Willful Infringement** ........................ 16

**SUMMARY OF THE ARGUMENT** ........................................................ 21

**ARGUMENT** ............................................................................................... 24

**POINT I**

**THE DISTRICT COURT COMMITTED CLEAR LEGAL ERROR BY DERIVING A DAMAGES COMPONENT NOT SUPPORTED BY THE EVIDENCE ADDUCED AT TRIAL.** ............................................. 24

**A. The District Court Abused its Discretion by Utilizing Appellants' Gross Revenue as its Base for Calculating the Royalty Amount of $216,000 Where All of the Evidence Adduced at Trial Centered on Appellants' Profits** ......................................................................................... 24

**B. The District Court Committed Clear Legal Error on Remand in Calculating the Reasonable Royalty Based Upon the Gross Revenue for All Infringing Models Offered by Appellants for Sale Rather Than the**

**Gross Revenue of the Six Infringing Models that were Actually Sold by Appellants with Removable End Panels** .................................................. 27

**C. The Federal Circuit did not Direct the District Court to Utilize the Appellants' Gross Revenues in Calculating the Reasonable Royalty on Remand** ....................................................................................................... 29

**POINT II**

**THE DISTRICT COURT COMMITTED CLEAR LEGAL ERROR IN RULING THAT AQUA SHIELD ESTABLISHED A SUFFICIENT BASIS BY CLEAR AND CONVINCING EVIDENCE THAT APPELLANTS WILLFULLY INFRINGED THE '160 PATENT.** ....... 35

**A. Even Under a Totality of Circumstances Standard, There was No Factually or Legally Sufficient Evidentiary Basis in the Record for the District Court to Find that the Appellants Willfully Infringed the '160 Patent** ..................................................................................................... 35

**B. The District Court Committed Clear Legal Error in Finding Willfulness Where Aqua Shield did not Provide a Basis for its Willful Infringement Claim Pursuant to the Court's Patent Rules** .................... 43

**CONCLUSION AND STATEMENT OF RELIEF SOUGHT** ............... 45

**PROOF OF SERVICE** ........................................................................... 46

**CERTIFICATE OF COMPLIANCE WITH RULE 32(A)** .................... 47

**ADDENDUM** ......................................................................................... 48

**Cases**                                                                                    **Page**

*Aqua Shield, Inc. v. Inter Pool Cover Team*,
774 *F.3d* 766 (Fed Cir. 2014)...................................................... 1, 29

*Anascape Ltd. v. Microsoft Corp.*,
2008 *WL* 7182476 at *3 - *4 (E.D. Tex. April 25, 2008)......................... 40

*Black & Decker, Inc. v. Robert Bosch Tool Corp.*,
260 *Fed. Appx*. 284, 291 (Fed. Cir. 2008) ................................... 36

*Comark Communications, Inc. v. Harris Corp.*,
156 *F.3d* 1182, 1186 (Fed. Cir. 1998)........................................... 35

*Cyber Corp. v. FAS Techs., Inc.*,
138 *F.3d* 1448, 1461 (Fed. Cir. 1998)(en banc)......................... 24

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
567 *F.3d* 1314, 1337 (Fed. Cir. 2009)....................................36-37

*Devex Corp. v. General Motors Corp.*,
667 *F.2d* 347, 363 (3rd Cir. 1981)............................................... 27

*Dow Chem. Co. v. Mee Indus., Inc.*,
341 *F.3d* 1370, 1382 (Fed. Cir. 2003)....................................25-26

*Fromson v. Western Litho Plat & Supp. Co.*,
853 *F.2d* 1568, 1574 (Fed. Cir. 1988)........................................... 31

*GSI Group, Inc. v. Sukup Mfg. Co.*,
591 *F.Supp.2d* 977, 983-84 (C.D. Ill. 2008)................................... 40

*Hughes Aircraft Co. v. United States*,
86 *F.3d* 1566, 1572 (Fed. Cir. 1996)........................................... 25

*In re Seagate Technology. LLC*,
497 *F.3d* 1360, 1371 (Fed. Cir. 2007) (en banc)................35-37, 40, 41, 43

*Linkco, Inc. v. Fujitsu Ltd.*,
232 *F.Supp.2d* 182, 190 (S.D.N.Y. 2002)..................................... 30

**Cases**                                                               **Page**

*Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*,
895 *F.2d* 1403, 1406 (Fed. Cir. 1990)..............................................25-27, 31

*Maxwell v. J. Baker, Inc.*,
86 *F.3d* 1098, 1108 (Fed. Cir. 1996)........................................................ 25

*McRo, Inc. v. Namco Banda Games America, Inc.*,
2-12-cv-10322 (C.D. Cal.  July 11, 2013, Order) (Wu, J.) .................40-41

*ResQNet.com v. Lansa, Inc.*,
533 *F.Supp.2d* 397, 420 (S.D.N.Y. 2008), *reversed on other grounds*,
2010 *WL* 396157 (Fed. Cir. 2010) .............................................................. 37

*Riles v. Shell Exploration and Prod. Co.*,
298 *F.3d* 1302, 1311 (Fed. Cir. 2002)........................................................ 26

*Stryker Corp. v. Intermedics Orthopedics, Inc.*,
96 *F.3d* 1409, 1413 (Fed. Cir. 1996)........................................................ 35

*TGIP, Inc. v. AT&T Corp.*,
527 *F.Supp.2d* 561, 579 (E.D. Tex. 2007) .............................................. 37

*Unisplay, S.A. v. Am. Elec. Sign Co.*,
69 *F.3d* 512, 517 (Fed. Cir. 1995)............................................................. 24


**Statutes**                                                             **Page**

28 U.S.C. §1331 ............................................................................................ 2

28 U.S.C. §1338 ............................................................................................ 2

28 U.S.C. §1295(a)........................................................................................ 2

35 U.S.C. §271(a)......................................................................................... 4

35 U.S.C. §284............................................................................................ 2, 25


**Federal Rules of Appellate Procedure**                                 **Page**

*Fed.R.App.P.* 4(a)(iv) ................................................................................ 2

**Federal Rules of Civil Procedure**                    **Page**

*Fed.R.Civ.P.* 26(a)(2) ................................................................ 27

*Fed.R.Civ.P.* 59 ........................................................................ 11

**Local Patent Rules**                              **Page**

*LPR* 2.3(g) ................................................................................ 44

## STATEMENT OF RELATED CASES AND PROCEEDINGS

(a)    Whether any other appeal in or from the same civil action or proceeding in the lower court or body was previously before this or any other appellate court:  Yes.

(1)    Title - Aqua Shield v. Inter Pool Cover Team, Alukov HZ Spol. S.R.O., Alukov Spol. S.R.O., and Pool & Spa Enclosures; Number - 2014-1263;

(2)    Date of Decision – December 22, 2014;

(3)    Composition of Panel – Wallach, Taranto, and Chen, Circuit Judges;

(4)    Citation of the Opinion in the Federal Reporter - 774 *F.3d* 766 (2014); and

(b)    Counsel is not aware of any case pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

# JURISDICTIONAL STATEMENT

This appeal is properly before this Court.

The action before the United States District Court for the District of Utah was a patent infringement case. The District Court had original jurisdiction of this action pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1338.

This appeal is brought pursuant to 28 U.S.C. §1295(a) from a final judgment of the United States District Court for the District of Utah arising under an Act of Congress relating to patents. The District Court entered Final Judgment in a Civil Case on August 17, 2015. (Docket No. 201).

The United States District Court for the District of Utah entered its Final Judgment on August 17, 2015. (Docket No. 201). Pursuant to FRAP 4(a)(iv), the time to appeal ran thirty (30) days from the August 17, 2015 entry of Final Judgment. A timely appeal was filed on September 9, 2015.

The Final Judgment of the United States District Court for the District of Utah (Docket No. 179) is final as to all parties as to liability and damages for all claims.

**STATEMENT OF THE ISSUES PRESENTED FOR APPEAL**

1.      Whether the District Court erred in calculating the amount of the reasonable royalty arising from the infringement of U.S. Patent No. 6,637,160 ("the '160 Patent").

2.      Whether the District Court erred in applying its methodology in calculating the reasonable royalty amount of $216,000.00.

3.      Whether the District Court erred in ruling that Aqua Shield established a sufficient evidentiary basis to find that Appellants willfully infringed the '160 Patent.

## STATEMENT OF THE CASE

The underlying case involves claims by Aqua Shield, Inc., against Appellants for infringement of the '160 Patent pursuant to 35 U.S.C. §271(a). (A60; DN165). The patent at issue in this litigation is the '160 patent. Bob Brooks is the sole inventor of the '160 patent. (A61; DN 165). Aqua Shield, Inc. is a New York corporation and was the plaintiff in the case.

The Defendants in the underlying case were comprised of four entities. (A61). Alukov HZ spol, s.r.o. and Alukov spol. S.r.o. (collectively "Alukov") was established in 1995 in Orel, Czech Republic. Alukov is a founding member and leader of the international association of qualified manufacturers and sellers known as the Inter-Pool Cover Team. (A113; T30:15-16). Alukov maintains a design, manufacturing and sales facility in the Czech Republic. (A114; T31:13-32:8).

Inter-Pool Cover Team ("IPC") is a pan-European association of qualified manufacturers and traders who develop, produce and deal in swimming pool enclosures. (A120-122; T:23-25). IPC's primary place of business is also located in the Czech Republic, and IPC does not directly sell any pool enclosures to customers in the United States. (Id.) Customers cannot purchase IPC's products through its Internet website. IPC offers

many models of pool enclosures.  (Id.)  The IPC team is an association of at least fourteen European companies designed to promote and manufacture and sell pool enclosures, of which Alukov and Pool & Spa Enclosures are members.  (A122; T25:13-26:8).

Pool & Spa Enclosures, LLC is a member of the Inter-Pool Cover Team, and the exclusive supplier and distributor of IPC's pool enclosures in the United States.  (Id.)  With the exception of a single sale of a pool enclosure to Sunshine Pool Products in Clearfield, Utah on or around July 19, 2005 (the "Utah Installation"), IPC has not authorized or empowered any other supplier and/or distributor to sell its pool enclosures in the United States other than Pool & Spa.  (A115-116; T:32-33).  With the exception of the Utah Installation, IPC has not sold and/or offered for sale any pool enclosure within the United States other than those sales generated and consummated by Pool & Spa, IPC's exclusive supplier and distributor of pool enclosures in the United States.  (Id.)  Pool & Spa Enclosures has the right to sell Inter Pool Cover Team pool enclosures in the United States and enjoys exclusive territorial sales within the United States.  (A120; T23:2-23).  Pool & Spa Enclosures was formed in 2007 in the State of Delaware and incorporated in the State of New Jersey in 2008 and commenced selling products in 2008.  (A116; T32:9-14).

Pool & Spa is the only IPC member that conducts business and sales operations of pool enclosures in the United States. (A120-122; T23-25). With the exception of the single sale to Sunshine Pool Products involving the Utah Installation that occurred prior to the commencement of Pool & Spa's operations, no other IPC member has ever sold a pool enclosure in the United States other than Pool & Spa. (A115-116; T:32-33). As the exclusive IPC agent, supplier and distributor of pool enclosures in the United States, no other person, company, or entity is authorized to sell pool enclosures on IPC's behalf in the United States. (Id.) Pool & Spa markets and promotes its pool enclosures on its website www.poolandspaenclosuresusa.com and attends trade shows within the United States. (A120; T23:2-23).

## STATEMENT OF FACTS

On October 18, 2005, Aqua Shield, Inc. filed a complaint with the United States District Court for the Eastern District of New York and requested that the Court issue an Order to Show Cause why Aqua Shield should not be granted injunctive relief against appellee, Inter Pool Cover Team. (A30). On October 26, 2005, the Eastern District of New York denied Aqua Shield's request and motion for a preliminary injunction. (A26). On or around December 31, 2008, the Eastern District of New York determined that the case should have been brought in Utah, and accordingly, transferred the case to the United States District Court for the District of Utah by Order dated January 5, 2009. (A43).

On August 31, 2009, the United States District Court for the District of Utah granted Aqua Shield's motion for leave to file an amended complaint adding Appellants, Alukov HZ Spol., S.R.O., Alukov Spol, S.R.O., and Pool & Spa Enclosures, LLC as Appellants to the case. (A49) (DN26).

On November 28, 2011, the District Court issued an Opinion and entered an Order granting in part and denying in part Aqua Shield's motion for partial summary judgment on infringement of the '160 patent. (A60; DN 87). In its Opinion and Order dated November 28, 2011, the Court

determined that Aqua Shield did not meet its burden with respect to demonstrating infringement and violation of Claim 15 of the '160 Patent in the Utah Installation. (A135; DN 87). In particular, the Court found that Claim 15 of the '160 patent required a product to have hooks and straps for securing panels. The District Court further concluded that because Aqua Shield could not demonstrate or offer evidence that the Utah Installation had or could have a hooks-and-straps system, it could not demonstrate infringement. (A135-136; DN 87). On this basis, the District Court denied Aqua Shield's motion for partial summary judgment on infringement of Claim 15 by the Utah Installation. (A135-136; DN 87).

The District Court's November 28, 2011 Opinion and Order exclusively addressed patent infringement and did not reach the merits of the Appellants' counterclaim on patent invalidity and unenforceability. (A140-141; DN 87). Pursuant to the District Court's Order entered October 18, 2012, the parties were permitted to file supplemental motions for summary judgment regarding the Appellants' counterclaim that the '160 patent is invalid over prior art.

On January 16, 2013, the District Court issued an Opinion and entered an Order denying the Appellants' motion for summary judgment on invalidity and unenforceability of the '160 patent and granting Aqua

Shield's motion dismissing the Appellants' counterclaims for non-infringement and patent invalidity.  (DN 129).

The underlying case was then the subject of a two day bench trial conducted before the Honorable Ted Stewart, U.S.D.J. on March 19, 2013 through March 20, 2013.  (A113).  On August 14, 2013, the Court issued its 38-page Findings of Fact and Conclusions of Law ordering that:

> 1.)    Judgment is entered in favor of Aqua Shield and against Appellants on Aqua Shield's claim that Appellants' models Universe, Laguna, Tropea, Combi, Style, Veranda, Spa and Orient infringe claims 1-14 and 16 of the '160 Patent;
>
> 2.)    Aqua Shield's claims for damages is denied;
>
> 3.)    Aqua Shield's request for a permanent injunction is granted to the extent it seeks the injunction described below and is denied in all other respects;
>
> 4.)    Appellants Inter Pool Cover Team, Alukov HZ Spol. S.R.O., Alukov, Spol S.R.O., Pool & Spa Enclosures, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with such person(s) who receive actual notice of this Order by personal service or otherwise shall be permanently enjoined from infringing, either directly, by inducement, or by contribution, the '160 Patent, by, during the term of the Patent, making, using, selling, or offering to sell the products adjudged to infringe in the United States or importing into the United States the products adjudged to infringe or not more than colorably different from the adjudicated devices.  The products adjudged to infringe the '160 Patent include the following pool cover models, manufactured or offered for sale by Appellants:  Universe, Laguna, Tropea, Combi, Style, Veranda, Spa, and Orient, with generally flat and removable end-panels.  (A97-98).

On or around September 12, 2013, Aqua Shield, Aqua Shield, Inc. filed a motion to alter and amend the Court's Final Judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. (DN 167).

On December 9, 2013, the District Court granted in part and denied in part Aqua Shield's motion to alter and amend the Final Judgment pursuant to *Fed.R.Civ.P.* 59 (A99-112). In so doing, the Court amended its Final Judgment to find that Aqua Shield was entitled to a reasonable royalty in the amount of $10,800 reflecting a rate of 8% on Appellants' net profit on infringing sales of $135,000. (Id.) The District Court further denied Aqua Shield's Rule 59 motion in all other respects. (Id.) On December 12, 2013, the District Court entered its Amended Final Judgment (A99-112; DN 179) in this case. Pursuant to 35 U.S.C. §284, on February 12, 2014, the District Court taxed costs in favor of Aqua Shield in the amount of $1,971.17. (A141; DN 186).

On or around January 8, 2014, Aqua Shield appealed the District Court's Amended Final Judgment to the United States Court of Appeals for the Federal Circuit. On December 22, 2014, the Federal Circuit vacated the District Court's decision concerning the amount of the reasonable royalty and the finding of no willfulness and remanded for further proceedings on

those issues only.  (*Aqua Shield, Inc. v. Inter Pool Cover Team*, 774 *F.3d*
766 (2014)).

On August 10, 2015, after ordering supplemental briefing on the
remanded issues, the District Court issued its Memorandum Decision and
Order on Remand awarding Aqua Shield, Inc. a reasonable royalty in the
amount of $216,000.  (A147-149; DN 200).  Furthermore, while the District
Court found willfulness, it denied Aqua Shield's request for enhanced
damages and attorney's fees.  (A154-156; DN 200).  On September 9, 2015,
Appellants timely filed the present appeal.

### A.  Elements of Aqua Shield's Damages Claims

### 1.  The District Court's Methodology in Establishing and Awarding a Reasonable Royalty

Neither party offered expert testimony regarding a reasonable royalty.
In February of 2009, the principals from both parties commenced settlement
negotiations to discuss licensing the '160 Patent to Appellants.  (A72-73;
T302:15-303:22).  Aqua Shield's president, Robert Brooks and Jan Zitko of
Alukov conducted a dinner meeting in Miami, Florida in February, 2009 for
the purpose of negotiating a royalty percentage for the sale of alleged
infringing pool enclosures marketed in the United States by Pool and Spa
and Alukov.  At that meeting, Mr. Brooks discussed  royalty rates in a range
of 5.5 %  to 2.75 % on a declining basis to be applied over the 13 years from

2009 through 2021 (when the patent was due to expire). The royalty rate among the range proposed discussed between Mr. Brooks and Mr. Zitko is 4.21%. The framework that Mr. Brooks and Mr. Zitko discussed was that the reasonable royalty rate would be applied to Alukov's sales prices for the pool enclosures it intended to sell in the United States. (A72-73; T303:9-22).

Prior to and subsequent to this meeting, Mr. Brooks and Mr. Zitko exchanged emails discussing possible royalty rates consistent with the percentage range of 5.5% to 2.75% set forth by Mr. Brooks in a table of royalty rates provided to Mr. Zitko. (A72-73). Though agreement was not reached on an actual royalty rate and Mr. Zitko continued to maintain at that time that Pool and Spa was not infringing on the Aqua Shield patent, the emails reveal that the parties were engaged in an actual negotiation over a royalty rate within a range that averaged 4.21% on a declining basis for the period prior to the expiration of the patent. (A72-73; T304:9-15).

Pool and Spa Enclosures have sold 74 pool enclosures that encompass the models that were deemed by the court's prior summary judgment determination to have infringed the Aqua Shield patent. (A-70; T22:23-23:1).

The record contains additional information related to Appellants' profits. (A109). Alexander Stonkus, the CEO of Pool & Spa Enclosures, LLC, testified that gross revenue on infringing sales was $2,700,000, that gross profit on infringing sales was just over $600,000, and ultimately the net profit margin on infringing sales was approximately 5%. (A109-110; T:228:5-229:22). Jan Zitko, the president of Alukov corroborated these figures, noting that Alukov has a yearly corporate net profit on all sales after taxation that is between 5% and 8%. (A109-110; T293:1-22). Mr. Zitko also noted that profit may be less than that on sales in the United States. (A109; T302:4-14). Mr. Stonkus similarly testified that Alukov's profit margin on all sales – which is 5% - is no different from its profit margin on infringing sales. (A109-110; T230:3-12). Mr. Stonkus further testified that Pool & Spa Enclosures has operated at a loss since it began. (A110; T230:3-12).

## 2. *Aqua Shield's Refusal to Offer Aggregate Losses*

Neither party offered expert testimony regarding lost profits. (A71). Aqua Shield's president, Robert Brooks testified at trial that this margin on sales of Aqua Shield enclosures declined from 35%-45% to 10%-15% after Pool and Spa entered the United States market. (A75-77; T113:2-14). Mr. Brooks refused to testify to actual dollar amount of lost profits allegedly

attributed to entry of Pool and Spa in the United States market. (A75-77; T131:2-12).

Despite being given the opportunity to break down the alleged decrease in profit margin from 35% to 45% to 10%-15% decrease that allegedly commenced in 2006, Mr. Brooks would not provide any testimony on the average price range of a pool enclosure sold by Aqua Shield in 2006. (A75-76). Mr. Brooks stated only that the 2006 price range of an Aqua Shield pool enclosure was private information that he would not disclose at trial. (A75-76; T131:13-21).

When Mr. Brooks was again asked what the average price of pool enclosure that Aqua Shield sold during the period from 2002 to 2006, he similarly stated that he would not answer the question or provide any actual dollar figures because it sought sensitive information. (A75-76; T132:2-5). In fact, the only information Mr. Brooks was willing to provide was that the price range that Aqua Shield established for its pool enclosures from low end to high end was between $8,000 and $50,000 and that such price range was the same in 2006 as it is in 2013. (A75-77; T132:19-133:9). Many factors including the increase in cost of raw materials and an overall housing slump nationally contributed to and were a factor in declining sales of pool

enclosures both by Aqua Shield and Pool and Spa for the period 2008 through 2013. (A75-77; T281:25-282:25).

Aqua Shield did not adduce any evidence at trial to show that demand existed for the features covered by the Aqua Shield patent. In fact, Aqua Shield offered no evidence, other than Mr. Brooks' testimony, to demonstrate that its pool enclosures embodied by the Aqua Shield patent are a commercial success or that customers demanded that the performance of the pool enclosures sought be obtained by using the technology found in the Aqua Shield patent. (A75-77).

Aqua Shield did not demonstrate at trial that it would have made the Appellants' sales but for the infringement. Aqua Shield failed to meet its burden of reconstructing the market but for the infringement, which includes factoring all infringement out of the economic picture. (A75-77). Acceptable non-infringing alternatives to Aqua Shield's pool enclosures that would have been available in the but-for market include at least: Alukov's Imperia, the Venezia, the Ravena, the Oceanic Low, the Oceanic High, the Viva, the Corso, and the Corano. (A75-77; T:78:19-24; 201:14-23).

Aqua Shield failed to offer at trial, other than Mr. Brook's unsupported testimony, any evidence demonstrating its entitled to lost profits. (A75-78).

### 3. Factors Considered Regarding Willful Infringement

After Aqua Shield sent Alukov a cease and desist letter in 2005, Aqua Shield filed a lawsuit in the United States District Court for the Eastern District of New York seeking a preliminary injunction against Alukov. (A38). The Court in that case made a ruling denying Aqua Shield's request for a preliminary injunction, and on the basis of that ruling, Alukov continued to sell and market pool enclosures. (A26; T199:17-22). Had a preliminary injunction been issued in that case, Alukov and Pool and Spa Enclosures would have stopped selling pool enclosures that were found to infringe in the United States and would have marketed its other enclosures which don't defy Aqua Shield's patent. (A160; T199:23-200:4). Alukov succeeded in defeating Aqua Shield's motion for a preliminary injunction based upon Aqua Shield's failure to prove a likelihood of successes on the merits. (A26; T70:2-4).

Alukov and Pool & Spa Enclosures raised legitimate and credible defenses of non-infringement, invalidity and unenforceability, which even if ultimately not successful, demonstrated a lack of recklessness. (A140-141; DN 89; DN 129). Aqua Shield further derived no evidence at trial of objective recklessness and instead only adduced testimony of subjective evidence regarding Appellants' "state of mind", which is not relevant to the

objective inquiry. (A162-164; T78:25-80:11; A167; 87:17-24; A179-180; T199:12-200:4). Aqua Shield could not demonstrate that Alukov sought to design infringing pool enclosures once Pool & Spa commenced operations in the United States because Alukov already manufactured pool enclosures with the same design in Europe for many years prior to the issuance of the '160 Patent. (A192; T51:10-12).

Pool & Spa Enclosures further had no expectation that either Alukov or Pool & Spa Enclosures were selling pool enclosures within the United States that infringed the Aqua Shield patent until the Court issued its determination on partial summary judgment on or around November 28, 2011. (A192-193; T51:14-52:5; A197; T56:6-14). Pool & Spa Enclosures and Alukov similarly had no expectation prior to the Court's determination on November 28, 2011 that their pool enclosures infringed because Alukov had been selling the same pool enclosures in Europe for many years before the Aqua Shield patent was issued in 2001. (A195; T54:3-15). It was very clear from the summary judgment ruling in November of 2011 what models were found to infringe Aqua Shield's patent. Alukov and Pool and Spa sell 18 models of pool and sunroom enclosures, 7 of which were found to infringe Aqua Shield's patent leaving the balance of 11 enclosures as non-infringing alternatives. (A140-145; DN 87; A161; T201:14-23).

After Pool and Spa Enclosures learned that some of its models infringed upon the Aqua Shield patent, they instructed the factory in the Czech Republic to modify its products and pool enclosures by fixing the end panels. This modification was essential to eliminating an independent claim of the Aqua Shield patent. Where the Aqua Shield patent required flat and removable end panels, once Pool and Spa learned that some of its products infringed upon that patent, it instructed the factory to only produce models with permanent, non removable end panels. (A163; T203:9-20).

Pool & Spa Enclosures continued to appear at trade shows after November 28, 2011 and promote the sale of the same models of pool enclosures, but they instructed the factory to modify construction of pool enclosures after November 28, 2011 to deviate from the design and structure that had been sold prior to the infringement determination. (A197; T56:10-22). Pool & Spa Enclosures and Alukov instructed the factory to modify the design of pool enclosures from the design of pool enclosures sold prior to the Court's November 28, 2011 determination to avoid continued infringement of the Aqua Shield patent. (A197; T56:10-22).

Alukov began selling pool enclosures to Pool & Spa Enclosures in 2008 with the same model and design Alukov had been selling in Europe for years prior to the issuance of the Aqua Shield patent in 2001 because Alukov

was previously advised from patent counsel that its pool enclosures did not infringe the patent and because Alukov obtained a ruling from the Eastern District of New York denying Aqua Shield's application for a preliminary injunction. (A194-196; T53:16-54:20; A212-213; 87:17-88:4; 274:19-24).

Since its inception, Alukov, IPC, and Pool & Spa have only sold six pool enclosures in the United States that have end panels that are generally flat and removable. Alukov and Pool & Spa Enclosures were advised that the inclusion of removable end panels is required by claim 1 of the Aqua Shield patent. (A196-197; T55:9-56:5). Alukov and Pool & Spa Enclosures received advice from patent counsel and had no expectation that pool enclosures infringed prior to the Court's rulings of November 28, 2011. (A197; T56:6-22; A212-213; T87:17-88:4; T274:19-24).

Right after receiving the Court's ruling on summary judgment in November of 2011, Pool & Spa Enclosures contacted the factory and told them that under no circumstances was Alukov to bring in any infringing enclosures into the United States that have removable faces and that all faces on all infringing pool enclosures must be permanent and non-removable. (A203; T62:1-6). The purpose and significance to Pool & Spa Enclosures' directive to the factory to not bring in any more pool enclosures with removable faces is that Pool & Spa did not want to be in violation of the

Court's ruling in November of 2011. (A203; T62:7-11). Pool & Spa Enclosures has not, in fact, sold any model of pool enclosure determined to be infringing with removable end panels since the Court's determination and ruling in November of 2011. (A203; T62:17-20).

Aqua Shield did not assert a basis for its willful infringement claim in its original Complaint before the United States District Court for the Eastern District of New York. (A30-36). Aqua Shield sought a preliminary injunction before the United States District Court for the Eastern District of New York that was denied. (A26). Aqua Shield failed to renew its application for a preliminary injunction once the case was transferred to the District of Utah. Furthermore, Aqua Shield never submitted a set of Preliminary Infringement Contentions to either the Eastern District of New York or the District of Utah as it was obligated to do under the Patent Rules. (A30-36; A49). As such, Aqua Shield failed to submit a basis for its allegation of willful infringement.

## SUMMARY OF THE ARGUMENT

Appellants respectfully submit this opening brief in support of their position that the United States District Court for the District of Utah committed clear legal error and abused its discretion by utilizing Appellants' gross revenue as its base for calculating the royalty amount where all of the evidence adduced at trial centered on Appellants' profits.

In this case, where Aqua Shield took no depositions during discovery and presented the Appellants and the District Court with no facts supporting its reasonable royalty calculation, where it failed to offer any expert testimony or expert report regarding damages at trial, and where the evidence adduced at trial centered on the profits and losses incurred by the Appellants, the gross profit methodology is the only reliable and possible way to arrive at a reasonable royalty. Any other calculation that uses a base beyond the gross profit figure of $639,507.67 testified to by Appellants and corroborated by the record at trial represented an abuse of discretion and nothing more than an exercise to arbitrarily derive a royalty amount. The District Court's failure to apply Appellants' gross profits on infringing sales as the proper base with which to calculate the royalty amounted to an abuse of discretion where the evidence gleaned at trial focused squarely on profits and not revenues. Accordingly, for all of these reasons and the reasons that

follow, and based upon the undisputed factual evidence in the record, Aqua Shield should have been entitled to a reasonable royalty of no more than $51,160 based upon the Appellants' gross profits. The District Court's calculation of the reasonable royalty amount should be reversed and remanded.

Appellants further respectfully submit this opening brief in support of their position that the District Court committed clear legal error in ruling that Aqua Shield established a sufficient basis by clear and convincing evidence that Appellants willfully infringed the '160 Patent. Aqua Shield's conduct in this case could not have supported a claim of willful infringement given the undisputed absence of any renewal for preliminary injunctive relief when the case was transferred from the Eastern District of New York to the District of Utah. Had Aqua Shield truly believed that the denial of its preliminary injunction application in the Eastern District of New York was without prejudice and was based solely on jurisdictional bases and not on a failure to demonstrate a likelihood of success on the merits, it would have or should have renewed its application for preliminary injunctive relief once the jurisdictional dispute was resolved and the case was transferred to Utah.

Nothing precluded Aqua Shield from doing so given that jurisdiction was now firmly established in Utah. Aqua Shield's failure to bring a

preliminary injunction application in Utah represents a tacit admission that it could not demonstrate a likelihood of success on the merits and that the Appellants were well advised to rely upon the denial of preliminary injunctive relief as a basis to continue to produce and sell its pool enclosures. This is especially true where Appellants observed Aqua Shield's complete abdication of its rights to renew its application for a preliminary injunction in 2009 when the case was transferred and the Complaint was filed.

Moreover, despite the requirement of the Patent Rules that a party alleging willful infringement must state the basis for such allegation at the same time and as part of its Preliminary Infringement Contentions, Aqua Shield never provided any basis for its allegation of willful infringement. In fact, Aqua Shield never submitted a set of Preliminary Infringement Contentions to either the Eastern District of New York or the District of Utah as it was obligated to do under the Patent Rules. For these reasons and the reasons that follow, the District Court clearly erred in determining that Appellants willfully infringed the '160 patent. Accordingly, the District Court's decision on willfulness should be reversed.

## LEGAL ARGUMENT

## POINT I

## THE DISTRICT COURT COMMITTED CLEAR LEGAL ERROR BY DERIVING A DAMAGES COMPONENT NOT SUPPORTED BY THE EVIDENCE ADDUCED AT TRIAL.

The District Court committed clear legal error and abused its discretion by utilizing Appellants' gross revenue as its base for calculating the royalty amount where all of the evidence adduced at trial centered on Appellants' profits. (Standard of Review: Clearly Erroneous. *Cyber Corp. v. FAS Techs., Inc.*, 138 *F.3d* 1448, 1461 (Fed. Cir. 1998) (en banc). ("The amount of damages determined by the district court is a question of fact that is reviewed for clear error on appeal"); *Unisplay, S.A. v. Am. Elec. Sign Co*., 69 *F.3d* 512, 517 (Fed Cir. 1995) ("The determination of the amount of damages based on a reasonable royalty is an issue of fact."). For the reasons that follow, the District Court's calculation of the reasonable royalty amount should be reversed and remanded.

## A. The District Court Abused its Discretion by Utilizing Appellants' Gross Revenue as its Base for Calculating the Royalty Amount of $216,000 Where All of the Evidence Adduced at Trial Centered on Appellants' Profits.

The District Court abused its discretion by utilizing Appellants' gross revenue as its base for calculating the royalty amount where all of the

evidence adduced at trial centered on Appellants' profits. (Standard of Review: Abuse of Discretion. *Maxwell v. J. Baker, Inc.*, 86 *F.3d* 1098, 1108 (Fed. Cir. 1996) ("We review the court's methodology used in calculating damages for an abuse of discretion."); *Hughes Aircraft Co. v. United States*, 86 *F.3d* 1566, 1572 (Fed. Cir. 1996) ("In determining what constitutes a reasonable royalty, the court has discretion to make certain subsidiary decisions, such as what methodology to use to arrive at a reasonable royalty, and those decisions are reviewed for an abuse of discretion.").

35 U.S.C. §284 provides that "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." The statute has been interpreted as creating a "presumption of damages when infringement is proven," *Dow Chem. Co. v. Mee Indus., Inc.*, 341 *F.3d* 1370, 1382 (Fed. Cir. 2003), because "[t]he statute is unequivocal that the district court must award damages in an amount no less than a reasonable royalty." *Id.* at 181; *see*, *also*, *Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 *F.2d* 1403, 1406 (Fed Cir. 1990)

("In patent law, the fact of infringement establishes the fact of damage because the patentee's right to exclude has been violated").

Despite this presumption, the patentee must put on at least some evidence supporting its assertion of a reasonable royalty rate. *Lindermann*, *supra*, 895 *F.2d* at 1406 ("The patentee must then prove the amount of damage"). The reasonable royalty analysis involves an approximation of the market as it would have hypothetically developed, and this, "in turn, requires *sound economic and factual predicates*." *Riles v. Shell Exploration and Prod. Co.*, 298 *F.3d* 1302, 1311 (Fed. Cir. 2002) (emphasis added). The Federal Circuit has explained that where a patentee fails to put on sufficient evidence of a reasonable royalty rate, the patentee will face an uphill battle overcoming the presumption that the amount awarded was reasonable: "the district court's obligation to award some amount of damages does not mean that a patentee who puts on little or no satisfactory evidence of a reasonable royalty can successfully appeal on the ground that the amount awarded by the court is not 'reasonable' and therefore contravenes section 284." *Dow Chem.*, *supra*, 341 *F.3d* at 1382 (internal quotation marks omitted).

Where little or no satisfactory evidence of a reasonable royalty is presented, the court should "award such reasonable royalties as the record evidence will support." *Id*. Where the record lacks any evidence of a

reasonable royalty rate, the Federal Circuit has approved of awarding "zero damages" because "[t]he statute requires the award of a reasonable royalty, but to argue that this requirement exists even in the absence of any evidence from which a court may derive a reasonable royalty goes beyond the possible meaning of the statute." *Lindemann*, *supra*, 895 F.2d at 1407 (quoting *Devex Corp. v. General Motors Corp.*, 667 *F.2d* 347, 363 (3rd Cir. 1981).

The burden is on the party seeking damages to show damages. *Devex Corp.*, *supra*, 667 *F.2d* at 361. Because of the complex and serious nature of damages, the determination of damages in patent litigation almost always requires the testimony of an expert witness. Damages experts provide reports, which contain expert opinions under Fed. R. Civ. P. 26(a)(2). These reports and associated testimony allow the fact-finder to make a determination as to damages for infringement and provide valuable economic information regarding the technology, products, and markets at issue in the dispute.

> **B.  The District Court Committed Clear Legal Error on Remand in Calculating the Reasonable Royalty Based Upon the Gross Revenue for All Infringing Models Offered by Appellants for Sale Rather Than the Gross Revenue of the Six Infringing Models that were Actually Sold by Appellants with Removable End Panels.**

Once the District Court applied the Appellants' gross revenues as the royalty base on remand, it committed legal error by expanding the base beyond the six infringing models actually and undisputedly sold by Appellants with removable end panels. Appellants unequivocally demonstrated at trial that they sold only six pool enclosures within the United States that included "removable end panels". (A210-215). The inclusion of removable end panels is required by claim 1 of the '160 patent, and the absence of it in a particular pool enclosure product renders such product non-infringing. The six enclosures containing end panels that are generally flat and removable sold by Appellants in the United States and their sales price include the following:

| Type | Name | Qty | Sales Price |
|------|------|-----|-------------|
| Universe | Thrall, James | 1 | $7,845.00 |
| Universe II | Morosky, Nick | 1 | $11,060.00 |
| Universe I | Richardson, Scott | 1 | $8,285.00 |
| Universe I | Moskow, Jeff | 1 | $11,120.00 |
| Universe IV | Riley, Patrick | 1 | $23,400.00 |
| Veranda | Wenger, William | 1 | $18,450.00 |

The remainder of the 74 models found to be infringing did not contain removable end panels as required by Claim 1 of the '160 Patent. As such,

and to the extent that the District Court applied the Appellants' gross revenues as the royalty base on remand, the District Court should have computed a reasonable royalty award to Aqua Shield in the amount of $6,412.80 representing the gross sales of the six infringing models actually sold with removable end panels ($80,160.00) multiplied by the royalty rate of 8%. Because the District Court expanded the royalty base beyond the infringing models with removable end panels in its analysis, it committed clear and reversible error. For these reasons, the District Court's calculation of the reasonable royalty amount should be reversed and remanded.

C. **The Federal Circuit did not Direct the District Court to Utilize the Appellants' Gross Revenues in Calculating the Reasonable Royalty on Remand**.

In its Opinion on the prior appeal, the Federal Circuit concluded that although the District Court acted properly in considering the Appellants' actual profits earned during the period of infringement, the District Court should evaluate its treatment of those profits in determining a reasonable royalty calculation on remand. *See*, *Aqua Shield v. Inter Pool Cover Team*, 774 *F.3d* 766, 772 (Fed. Cir. 2014). It is highly instructive and germane to the narrow analysis herein to note that the Federal Circuit did not direct the District Court to consider any evidence not in the record nor did it invite any revaluation of the credibility determinations made by the Court at trial with

respect to Mr. Brooks' testimony or lack thereof on Aqua Shield's sales and profits. Rather, the sole source of the Federal Circuit's concern with respect to the reasonable royalty was that the Appellants' net profits may have acted as a royalty cap[1]. As such, and at most, the District Court should have found that the evidence in the record limited Aqua Shield to a reasonable royalty for the gross profits earned by the Appellants by virtue of their sales of infringing pool enclosures made in the United States[2].

"A reasonable royalty may . . . be based on the infringer's profits." *Linkco, Inc. v. Fujitsu Ltd.*, 232 *F.Supp.2d* 182, 190 (S.D.N.Y. 2002). The Federal Circuit has held that a number of different methodologies can be employed for calculating a reasonable royalty including basing the royalty on a percentage of the infringer's gross or net profit, as a set amount per infringing product sold, or as a percentage of the gross or net price received for each infringing product. *Fromson v. Western Litho Plate & Supp. Co.*,

---

[1] Pool and Spa Enclosures have sold 74 pool enclosures that encompass the models that were deemed by the District Court to have infringed the Aqua Shield patent. (A70; T22:23-23:1).

[2] Of the 74 infringing enclosures sold, Pool & Spa Enclosures has generated total revenue of approximately $2,700,000. (A70). The total cost of goods sold for pool enclosures made by Pool & Spa Enclosures is $1,369,622 and the gross profit for those sales after deducting their manufacturing costs as documented by records produced from Alukov was $639,507.67. (T15:2-22; A109).

853 *F.2d* 1568, 1578 (Fed. Cir. 1988). In *Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 *F.2d* 1403, 1406 (Fed Cir. 1990), the Federal Circuit noted that the defendant's profit margin was the appropriate tool for determining a reasonable royalty where plaintiff created a sparse and totally inadequate record at trial.

In this case, where Aqua Shield failed to offer any expert testimony or expert report regarding damages at trial and where the evidence adduced at trial centered on the profits and loss incurred by the Appellants for the period from 2006 through 2013, the gross profit methodology is the only reliable and possible way to arrive at a reasonable royalty[3]. (A80-83; A75-77; A105-106). Any other calculation that uses a base beyond the gross profit figure of $639,507.67 testified to by Appellants and corroborated by the record at trial represented an abuse of discretion and nothing more than an exercise to arbitrarily derive a royalty amount. (A105-106). The District Court's failure to apply Appellants' gross profits on infringing sales as the proper base with which to calculate the royalty amounted to an abuse of discretion where the evidence gleaned at trial focused squarely on profits

---

[3] This methodology is based upon the factual evidence in the record and on Aqua Shield's total and complete failure to present any factual record on its own financial affairs beyond naked assertions. (A80-83; A75-77; *T115:23-25; T:303:9-12*).

and not revenues. Accordingly, for all of these reasons and the undisputed factual evidence in the record, Aqua Shield should have been entitled to a reasonable royalty of no more than $51,160[4] based upon the Appellants' gross profits. The District Court's calculation of the reasonable royalty amount should be reversed and remanded.

Furthermore, Aqua Shield took no depositions during discovery and presented the Appellants and the District Court with no facts supporting its reasonable royalty calculation. (A80-83; A75-77; A105-106). Mr. Brooks refused to testify at trial to the actual dollar amount[5] of lost profits due to the alleged decline in margins for the sale of Aqua Shield pool enclosures allegedly occasioned by the entry of Pool and Spa in the United States market. (A80-83; A75-77; T131:2-12). Aqua Shield introduced no financial records to corroborate Mr. Brooks' limited testimony, and Mr. Brooks refused to testify regarding the foundation for his various estimates. (A80-83; A75-77; A105-106; T115:23-25; T303:9-12).

Nothing in the Federal Circuit's Opinion suggested that the District Court should determine a reasonable royalty that is wholly unsubstantiated

---

[4] ($639,507.67 of gross profit * 8% royalty rate = $51,160.61).

by evidence admitted at trial and divorced from the credibility determinations of the only witness Aqua Shield did present. There is simply no basis in the evidence in the record to support the District Court's determination that the royalty be calculated based on gross *revenues* rather than gross profits. In essence, and by using a base of gross revenues instead of gross profits, where all of the evidence adduced at trial focused on profits, the District Court arbitrarily set a base against which a royalty would be applied.

What the District Court did hear was testimony regarding Appellants' profits and profit margins. (A106-109). Alexander Stonkus, the CEO of Pool & Spa Enclosures, LLC, testified that gross profit on infringing sales was just over $600,000. (A106-109; T:228:5-229:22). Mr. Stonkus further testified that Pool & Spa Enclosures has operated at a loss since it began. (A106-109; T230:3-12). Jan Zitko, the president of Alukov corroborated these figures, noting that Alukov has a yearly corporate net profit on all sales after taxation that is between 5% and 8%. (A106-109; T293:1-22). Mr. Zitko also noted that profit may be less than that on sales in the United States. (A104-106; T302:4-14).

---

[5] Mr. Brooks further stated that he would not answer any question or provide any actual dollar figures because it sought sensitive information that he would not disclose at trial. (*T131:13-21-132:2-5).*

By virtue of this testimony, the District Court should have applied a royalty rate against those numbers to relate the royalty to some measurable base that is in turn related to the value of the product found to be infringing. And given the easy design-around available to the Appellants (making sure the end-panels are not removable), it was clearly erroneous to expand the base to gross revenues rather than apply it to gross revenues.  Given Aqua Shield's total failure to present evidence relating to a reasonable royalty, and by virtue of the fact that the evidence focused on Appellants' profits, the District Court's application of Appellants' gross revenue as a royalty base constituted an abuse of discretion.   For all of the foregoing reasons, the District Court's clearly erroneous calculation of the reasonable royalty amount should be reversed and remanded.

## POINT II

**THE DISTRICT COURT COMMITTED CLEAR LEGAL ERROR IN RULING THAT AQUA SHIELD ESTABLISHED A SUFFICIENT BASIS BY CLEAR AND CONVINCING EVIDENCE THAT APPELLANTS WILLFULLY INFRINGED THE '160 PATENT.**

The District Court committed clear legal error in ruling that Aqua Shield established a sufficient basis by clear and convincing evidence that Appellants willfully infringed the '160 Patent. (Standard of Review: Clearly Erroneous. *Comark Communications, Inc. v. Harris Corp.*, 156 *F.3d* 1182, 1186 (Fed. Cir. 1998) (Whether infringement is willful is a question of fact, and willful infringement must be established by clear and convincing evidence); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 *F.3d* 1409, 1413 (Fed. Cir. 1996) ("The court's finding of willful infringement is one of fact, subject to the clearly erroneous standard of review"). For the reasons that follow, the District Court's conclusions with respect to Appellants' willfulness should be reversed.

**A.**   **Even Under a Totality of Circumstances Standard, there was no Factually or Legally Sufficient Evidentiary Basis in the Record for the District Court to Find that the Appellants Willfully Infringed the '160 Patent.**

Under the standards set forth in *In re Seagate Technology, LLC*, 497 *F.3d* 1360, 1371 (Fed. Cir. 2007) (*en banc*), the District Court committed legal and factual error by concluding that Aqua Shield proved by clear and

35

convincing evidence that Appellants acted with reckless disregard of the claims of the '160 patent. To show "reckless disregard," Aqua Shield had to demonstrate by clear and convincing evidence that: (1) Appellants acted despite an objectively high likelihood that its actions constituted infringement of a valid patent; and (2) Appellants knew or should have known of that objectively-high risk. *Id*. The record developed at trial demonstrated that Aqua Shield did not prove either prong, but its willfulness claim should have failed as a matter of law because the first "threshold" prong of the test – to which Defendants' "state of mind" is not relevant – clearly was not met in light of the defenses maintained and Aqua Shield's failure of proof.

In applying *Seagate*, the Federal Circuit and trial courts alike have stated that a patentee cannot clear the threshold "objective" hurdle when the accused infringer has set forth legitimate and credible positions on non-infringement or invalidity. *See*, *Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 260 *Fed. Appx*. 284, 291 (Fed. Cir. 2008) (stating that "both legitimate defenses to infringement claims and credible invalidity arguments demonstrate the lack of an objectively high likelihood that a party took actions constituting infringement of a valid patent"); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 *F.3d* 1314, 1337 (Fed Cir. 2009)

(finding that the "district court was correct to rule that an objectively high likelihood of infringement could not have been found under Seagate's first prong"); *ResQNet.com v. Lansa, Inc.*, 533 *F.Supp.2d* 397, 420 (S.D.N.Y. 2008) ("While Lansa was ultimately unsuccessful in defending against infringement or proving invalidity with regard to the '075 Patent, its arguments in these areas were substantial, reasonable, and far from the sort of easily-dismissed claims that an objectively reckless infringer would be forced to rely upon."), *reversed on other grounds*, 2010 *WL* 396157 (Fed. Cir. 2010); *TGIP, Inc. v. AT&T Corp.*, 527 *F.Supp.2d* 561, 579 (E.D. Tex. 2007) ("Even though AT&T ultimately did not prove its invalidity defense by clear and convincing evidence, its position was hardly objectively unreasonable.").  In other words, a plaintiff does not satisfy the first prong of the *Seagate* test merely by prevailing in its liability case.  *See*, *Depuy Spine, Inc.*, *supra*,  567 *F.3d* at 1337.  Accordingly, the objective prong of Seagate requires that the risk of infringement be so high that the accused infringer has no reasonable defense at its disposal.

In its prior Opinion, the Federal Circuit acknowledged the relevance of the denial of Aqua Shield's application for preliminary injunctive relief to the Court's analysis on willful infringement.  Aqua Shield filed a lawsuit in the United States District Court for the Eastern District of New York seeking

a preliminary injunction against Alukov. The Court in that case made a ruling denying Aqua Shield's request for a preliminary injunction, and on the basis of that ruling, Alukov continued to sell and market pool enclosures[6]. (A21-24; *T199:17-22).*

On remand, Aqua Shield continued its attempt to minimize and/or condition the Eastern District of New York's denial of its request for a preliminary injunction through its specious argument that such denial was based purely on procedural and/or jurisdictional grounds[7]. However, Aqua Shield's conduct could not have supported a claim of willful infringement given the undisputed absence of any renewal for preliminary injunctive relief when the case was transferred from the Eastern District of New York to the District of Utah. Had Aqua Shield truly believed that the denial of its preliminary injunction application was based solely on jurisdictional bases and not on a failure to demonstrate a likelihood of success on the merits, it

---

[6] Had a preliminary injunction been issued in that case, Alukov and Pool and Spa Enclosures would have stopped selling pool enclosures that were found to infringe in the United States and would have marketed its other enclosures which don't defy Aqua Shield's patent. (A160-161; T199:23-200:4).

[7] Alukov succeeded in defeating Aqua Shield's motion for a preliminary injunction based upon Aqua Shield's failure to prove a likelihood of successes on the merits. (A21-24; Minute Entry, entered Oct. 26, 2005, *Aqua Shield v. Inter Pool Cover Team*, Case No. 1:05-cv-04880-CBA-SMG (E.D.N.Y., filed October 18, 2005); T70:2-4.

would have or should have renewed its application for preliminary injunctive relief once the jurisdictional dispute was resolved and the case was transferred to Utah[8]. Nothing precluded Aqua Shield from doing so given that jurisdiction was now firmly established in Utah. Aqua Shield's failure to bring a preliminary injunction application in Utah represents a tacit admission that it could not demonstrate a likelihood of success on the merits and that the Appellants were well advised to rely upon the denial of preliminary injunctive relief as a basis to continue to produce and sell its pool enclosures. This is especially true where Appellants observed Aqua Shield's complete abdication of its rights to renew its application for a preliminary injunction in 2009 when the case was transferred and the Complaint was filed[9].

In fact, courts that have considered a plaintiff's failure to bring an application for a preliminary injunction upon the filing of its lawsuit have

---

[8] On or around December 31, 2008, the Eastern District of New York determined that the case should have been brought in Utah, and accordingly, transferred the case to the United States District Court for the District of Utah by Order dated January 5, 2009.

[9] On August 31, 2009, the United States District Court for the District of Utah granted Aqua Shield's motion for leave to file an amended complaint adding appellees, Alukov HZ Spol., S.R.O., Alukov Spol, S.R.O., and Pool & Spa Enclosures, LLC as Appellees to the case. (A49; Docket No. 26).

rejected a willfulness determination on its face. *See*, *Seagate*, *supra*, 497 *F.3d* at 1374; *see also* *Anascape Ltd. v. Microsoft Corp.*, 2008 WL 7182476, at \*3-\*4 (E.D. Tex. Apr. 25, 2008) (granting summary judgment of no willfulness when preliminary relief was not sought); *GSI Group, Inc. v. Sukup Mfg. Co.*, 591 *F.Supp. 2d* 977, 983-84 (C.D. Ill. 2008) (applying reasoning of Seagate to hold that a patentee who does not attempt to stop post-filing infringement by seeking preliminary injunctive relief "is not entitled to enhanced damages for any post-filing willful infringement."

In *McRo, Inc. v. Namco Banda Games America, Inc.,* 2-12-cv-10322 (C.D. Cal. July 11, 2013, Order) (Wu, J.), the court granted defendant's motion to dismiss plaintiff's wilful infringement claims for failure to state a claim because plaintiff did not seek a preliminary injunction. It stated:

> "[*In re Seagate Tech., LLC*, 497 *F.3d* 1360 (Fed. Cir. 2007)] makes clear that an allegation of willfulness based on the accused infringer's post-suit knowledge of the patent can only be sustained if the plaintiff seeks a preliminary injunction. . . . We are not here presented with a question of whether the claim contains sufficient factual detail. Instead, the question is whether the claim can exist under the circumstances present, where the alleged knowledge of the patent resulted only from the filing of the original complaint in the action and the plaintiff has not sought a preliminary injunction. . . . It would eviscerate *Seagate* if a plaintiff could file an amended complaint alleging willfulness immediately after the original complaint was served. In sum, *Seagate* makes clear that where notice of the patent comes via the lawsuit, a plaintiff who wants to pursue a

charge of willfulness needs to file a motion for a preliminary injunction, not an amended complaint." *Id*.

The District Court clearly erred by permitting Aqua Shield to play both sides of the "preliminary injunction fence" in its rulings on willfulness on remand. Either Aqua Shield failed to demonstrate a likelihood of success on the merits in the Eastern District of New York or it was dilatory in not seeking an application for preliminary injunctive relief after the case was transferred to the District of Utah. Under either approach, Aqua Shield simply did not and could not uncover any factually or legally sufficient basis to find by clear and convincing evidence that the Appellants proceeded with infringing conduct in the face of an objectively high likelihood that it was infringing the claims of a valid and enforceable patent[10].

Moreover, the record plainly demonstrates that Pool & Spa Enclosures had no expectation that either Alukov or Pool & Spa Enclosures were selling pool enclosures within the United States that infringed the Aqua Shield

---

[10] Alukov began selling pool enclosures to Pool & Spa Enclosures in 2008 with the same model and design Alukov had been selling in Europe for years prior to the issuance of the Aqua Shield patent in 2001 because Alukov was previously advised from patent counsel that its pool enclosures did not infringe the patent and because Alukov obtained a ruling from the Eastern District of New York denying Aqua Shield's application for a preliminary injunction. (A88-90; *T53:16-54:20; 87:17-88:4; 274:19-24*).

patent[11] until the Court issued its determination on partial summary judgment on or around November 28, 2011[12]. (A88-90; *T51:14-52:5; 56:6-14*). After Pool and Spa Enclosures learned that some of its models infringed upon the Aqua Shield patent, they instructed the factory in the Czech Republic to modify its products and pool enclosures by fixing the end panels[13]. (A88-90; *T:200:9-15*). This modification was essential to

---

[11] Pool & Spa Enclosures and Alukov similarly had no expectation prior to the Court's determination on November 28, 2011 that their pool enclosures infringed because Alukov had been selling the same pool enclosures in Europe for many years before the Aqua Shield patent was issued in 2001. (*T54:3-15*). It was very clear from the summary judgment ruling in November of 2011 what models were found to infringe Aqua Shield's patent. Alukov and Pool and Spa sell 18 models of pool and sunroom enclosures, 7 of which were found to infringe Aqua Shield's patent leaving the balance of 11 enclosures as non-infringing alternatives. (*T201:14-23*).

[12] Right after receiving the District Court's ruling on summary judgment in November of 2011, Pool & Spa Enclosures contacted the factory and told them that under no circumstances was Alukov to bring in any such enclosures into the United States that have removable faces and that all faces on all infringing pool enclosures must be permanent and non-removable. (*T62:1-6*). The purpose and significance to Pool & Spa Enclosures' directive to the factory to not bring in any more pool enclosures with removable faces is that Pool & Spa did not want to be in violation of the District Court's ruling in November of 2011. (*T62:7-11*). Pool & Spa Enclosures has not, in fact, sold any model of pool enclosure determined to be infringing with removable end panels since the Court's determination and ruling in November of 2011. (*T62:17-20*).

[13] Since its inception, Alukov, IPC, and Pool & Spa have only sold six pool enclosures in the United States that have end panels that are generally flat and removable. Alukov and Pool & Spa Enclosures were advised that the

eliminating an independent claim of the Aqua Shield patent. Where the Aqua Shield patent required flat and removable end panels, once Pool and Spa learned that some of its products infringed upon that patent, it instructed the factory to only produce those models with permanent, non-removable end panels[14]. (A88-90; *T203:9-20*). For these reasons, and because Aqua Shield did not satisfy the threshold objective hurdle in <u>*Seagate*</u>, the District Court clearly erred in determining that Appellants willfully infringed the '160 patent. Accordingly, the District Court's decision should be reversed.

> **B.** **The District Court Committed Clear Legal Error in Finding Willfulness Where Aqua Shield did not Provide a Basis for its Willful Infringement Claim Pursuant to the Court's Patent Rules.**

---

inclusion of removable end panels is required by claim 1 of the Aqua Shield patent. (*T55:9-56:5*). Alukov and Pool & Spa Enclosures received advice from patent counsel and had no expectation that pool enclosures infringed prior to the Court's rulings of November 28, 2011. (A88-90; *T:56:6-22; 87:17-88:4; 274:19-24*).

[14] Pool & Spa Enclosures continued to appear at trade shows after November 28, 2011 and promote the sale of the same models of pool enclosures, but they instructed the factory to modify construction of pool enclosures after November 28, 2011 to deviate from the design and structure that had been sold prior to the infringement determination. (*T56:10-22*). Pool & Spa Enclosures instructed the factory to modify the design of pool enclosures from the design of pool enclosures sold prior to the Court's November 28, 2011 determination to avoid continued infringement of the Aqua Shield patent. (A88-90; *T200:9-15; T56:10-22*).

The District Court further erred in finding willfulness where Aqua Shield failed to comply with the Court's Patent Rules by failing to provide a basis for the willful infringement allegation in a set of Preliminary Infringement Contentions. Despite the requirement of Local Patent Rule 2.3(g) that a party alleging willful infringement must state the basis for such allegation at the same time and as part of its Preliminary Infringement Contentions, Aqua Shield never provided any basis for its allegation of willful infringement. In fact, Aqua Shield never submitted a set of Preliminary Infringement Contentions to either the Eastern District of New York or the District of Utah as it was obligated to do under the Patent Rules. As such, Aqua Shield failed to submit a basis for its allegation of willful infringement for both the Court and the Appellants to consider and evaluate. For these reasons as well, the District Court clearly erred in determining that Appellants willfully infringed the '160 patent. Accordingly, the District Court's decision should be reversed.

**CONCLUSION AND STATEMENT OF RELIEF SOUGHT**

For all of the foregoing reasons, Appellants respectfully urge this Court to reverse and remand the District Court's findings with respect to the calculation of the reasonable royalty and reverse the District Court's decision with regard to willfulness in this action.

<div style="margin-left: 50%;">

By: */s/ Gregory J. Coffey*

Gregory J. Coffey

**COFFEY & ASSOCIATES**

310 South Street

Morristown, New Jersey 07960

(973) 539-4500 – Phone

(973) 539-4501 – Fax

gjc@coffeylaw.com - Email

Counsel for Appellants

</div>

Dated: December 4, 2015

## PROOF OF SERVICE

I hereby certify that on the 7th day of December, 2015, I electronically filed the foregoing Corrected Brief of Defendants-Appellants in PDF-OCR format via the Electronic Case Filing System.

I hereby certify that on the 7th day of December, 2015, I caused one (1) copy of the foregoing Corrected Brief of Defendants-Appellants in PDF-OCR format to be served upon the attorneys listed below via the Electronic Case Filing System.

Todd E. Zenger, Esq.
Kirton McConkie
60 East South Temple, Suite 1800
Salt Lake City, Utah 84111
tzenger@kmclaw.com

By: */s/ Gregory J. Coffey*
Gregory J. Coffey
**COFFEY & ASSOCIATES**
310 South Street
Morristown, New Jersey 07960
(973) 539-4500 – Phone
(973) 539-4501 – Fax
gjc@coffeylaw.com - Email
Counsel for Appellants

Dated: December 7, 2015

## CERTIFICATE OF COMPLIANCE WITH
## RULE 32(A)

Certificate of Compliance with type – volume limitation, type face requirements and type style requirements.

1.  This brief complies with the type – volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    [ x ]  This brief contains 10,049 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(ii), or

    [  ]  This brief uses a mono space type facing contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(ii).

2.  This brief complies with the type face requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ x ]  This brief has been prepared in a proportionally spaced type face using Microsoft Word processing program in 14 point Times New Roman Style, or

    [  ]  This has been prepared in a mono spaced type face using [statement inversion of word processing program] with [state number of characters per inch and name of type style].


By: */s/ Gregory J. Coffey*
Gregory J. Coffey
**COFFEY & ASSOCIATES**
310 South Street
Morristown, New Jersey 07960
(973) 539-4500 – Phone
(973) 539-4501 – Fax
gjc@coffeylaw.com - Email
Counsel for Appellants

Dated: December 4, 2015

# ADDENDUM

DN 201        Judgment in a Civil Case Entered August 17, 2015

DN 200        Memorandum Decision and Order on Remand Entered August 10, 2015

AO 450 (Rev.5/85) Judgment in a Civil Case

# United States District Court

### Central Division for the District of Utah

AQUA SHIELD,

       Plaintiff

v.

INTERPOOL POOL COVER TEAM,
ALUKOV HZ SPOL SRO,  ALUKOV SPOL
SRO, and  POOL &AMP; SPA
ENCLOSURES,

       Defendants

**JUDGMENT IN A CIVIL CASE**

Case Number:2:09-CV-13-TS

IT IS ORDERED AND ADJUDGED

That judgment be entered in favor of the plaintiff and against the defendant on plaintiff's claim that the defendants' models Universe, Laguna, Tropea, Combi, Style, Veranda, Spa and Orient infringe claims 1-14 and 16 of the '160 Patent.  Defendants, their officers, agents, servants, employees and attorneys and those in active concert or participation with such person(s) who receive actual notice of this order, by personal service or otherwise, shall be permanently enjoined from infringing, either directly, by inducement, or by contribution  the '160 Patent making, using, selling or offering to sell the products adjudged to infringe in the United States or importing into the United States the products adjudged to infringe or are not more than colorably different from the adjudicated devises.  The products adjudged to infringe the '160 Patent include the following pool cover models manufactured or offered for sale by defendants: Universe, Laguna, Tropea, Combi, Style, Veranda, Spa and Orient with generally flat and removable end-panels.  Plaintiff is further awarded costs in the amount of $1,971.17 and reasonable royalties in the amount of $216,000.00.

August 17, 2015
_____
Date

D. Mark Jones
_____
Clerk of Court


_____
(By) Deputy Clerk

AA1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AQUA SHIELD, INC., a New York corporation,<br><br>      Plaintiff,<br><br>v.<br><br>INTER POOL COVER TEAM, ALUKOV HZ SPOL. S.RO., ALUKOV, SPOL. S.R.O., POOL & SPA ENCLOSURES, LLC,<br><br>      Defendants. | MEMORANDUM DECISION AND ORDER ON REMAND<br><br><br>Case No. 2:09-CV-13 TS<br><br>District Judge Ted Stewart |

This matter is before the Court following remand from the United States Court of Appeals for the Federal Circuit. The Federal Circuit vacated the Court's decision concerning the amount of the reasonable royalty and the finding of no willfulness, which led to the denial of enhanced damages. The Federal Circuit remanded for further proceedings on these issues. For the reasons discussed below, the Court finds that Plaintiff is entitled to damages in the amount of $216,000 and that Defendants' conduct was willful, but the Court declines to award enhanced damages or attorney's fees.

I. BACKGROUND

Plaintiff brought this action in the Eastern District of New York on October 18, 2005, alleging that Defendants infringed U.S. Patent No. 6,637,160 (the "'160 Patent"). Plaintiff sought, but was ultimately denied, a preliminary injunction. "The district court in New York denied the requested preliminary injunction because Aqua Shield lacked information needed to

AA2

show a likelihood of success on the merits and because of questions about personal jurisdiction over the defendants."[1]  The case was eventually transferred to this Court.

> Aqua Shield moved for summary judgment of infringement based on IPC's sales of various enclosure models. . . . IPC responded with noninfringement arguments only as to claims 10 and 15, not the other fourteen asserted claims. The district court held that there was no genuine issue of fact about IPC's infringement of all claims except claim 15, and therefore entered summary judgment of infringement of claims 1–14 and 16.  Aqua Shield later dropped its allegation of infringement of claim 15, and it presented no infringement issues at the later trial.
> With respect to invalidity, the parties filed cross-motions for summary judgment.  As to anticipation, the district court ruled that IPC failed to compare[ ] the construed claims of the '160 patent to the prior art and did not introduce[ ] evidence showing that the [prior art] discloses each limitation of the '160 patent. As to obviousness, the court ruled that IPC did not argue[ ] obviousness on a claim-by-claim basis, try to show that all of the elements of even a single claim in the '160 patent were made obvious by prior art, or articulate[ ] why a person of ordinary skill in the art would have been motivated to combine the prior art to produce the claimed invention.  For those reasons the district court granted summary judgment in favor of Aqua Shield regarding validity.[2]

The Court held a two-day bench trial in March 2013 concerning issues of relief.  In the Court's Findings of Facts and Conclusions of Law, the Court found that Plaintiff had failed to prove damages, that Defendants' conduct was not willful, and that Plaintiff was not entitled to attorney's fees.  The Court did, however, enter a permanent injunction.

Plaintiff moved the Court to alter its judgment to include a finding of willfulness, reasonable compensation, and costs.  The Court agreed to amend the judgment in part, awarding Plaintiff $10,800 in damages as a reasonable royalty.  The Court declined to otherwise amend the judgment.

---

[1] *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 768 (Fed. Cir. 2014).

[2] *Id.* at 768–69 (alterations in original) (citations and quotation marks omitted).

Plaintiff appealed the judgment of the Court and the Federal Circuit vacated the Court's royalty award, non-willfulness finding, and denial of enhanced damages and attorney's fees.

On appeal, Plaintiff challenged the Court's application of the hypothetical-negotiation approach. The Federal Circuit agreed, in part, finding that the Court erred in the use it made of Defendants' profit figures. The Federal Circuit found that the Court erred "in treating the profits IPC actually earned during the period of infringement as a royalty cap. That treatment incorrectly replaces the hypothetical inquiry into what the parties would have anticipated, looking forward when negotiating, with a backward-looking inquiry into what turned out to have happened."[3] This Court's analysis "incorrectly replace[d] the inquiry into the parties' anticipation of what profits would be earned *if a royalty (of amounts being negotiated) were to be paid* with an inquiry into what profits were earned *when IPC was charging prices without accounting for any royalty.*"[4]

The Federal Circuit noted that it had "not been shown proof that this case is different from the typical one in which pricing might be adjusted to account for a royalty based on sales price. Indeed, IPC has not pointed to any evidence supporting the district court's conclusion that a royalty should be a percentage of profits rather than sales revenues."[5] The court vacated the royalty calculation and remanded for redetermination. The Federal Circuit directed this Court to "consider all relevant record evidence, including the advantages of the patented product, the ease

---

[3] *Id.* at 772.

[4] *Id.*

[5] *Id.*

and cost of designing around the claimed invention, and the relevance of IPC's actual profits to

what IPC's expectations would have been in a hypothetical negotiation."[6]

On the issue of willfulness, this Court reasoned that prior to its infringement decision,

Defendants did not act willfully based on the decision of the New York court to deny Plaintiff's

motion for a preliminary injunction. On appeal, the Federal Circuit found that "the Eastern

District of New York's decision to deny Aqua Shield's motion for a preliminary injunction

cannot reasonably be read to support a conclusion that any substantial basis existed for doubting

infringement or validity."[7]  The court went on to state:

> The New York court denied Aqua Shield's motion because of personal-
> jurisdiction questions and because Aqua Shield lacked sufficient knowledge of
> IPC's product to make the required showing of a likelihood of success on the
> merits. Personal jurisdiction does not speak to infringement or validity at all.
> And Aqua Shield's ignorance of IPC's products appears irrelevant to a validity
> analysis and does not indicate what an infringement analysis of those products
> would show once the details of those products were fully known—as they were
> all along to IPC. The denial of Aqua Shield's motion for a preliminary injunction
> is thus a legally insufficient reason for determining that IPC did not willfully
> infringe.[8]

On the issue of willfulness after the Court had issued its decision finding infringement,

this Court had relied on testimony that Defendants had attempted to design around the '160

patent by permanently fixing the end panels in place. The Federal Circuit found that this

evidence "stops short of demonstrating that IPC did in fact design around the '160 patent and, if

so, when."[9]  "Questions remain about whether that change was actually implemented or whether

---

[6] *Id.* at 773.

[7] *Id.* at 774.

[8] *Id.*

[9] *Id.*

AA5

the resulting products avoided infringement.  Both inquiries are relevant to the issue of willfulness."[10]

The Federal Circuit thus vacated the Court's determination concerning willfulness.  The court stated that "[o]n remand, the district court should focus on IPC's defenses as articulated during the infringement and invalidity proceedings—during which IPC presented no infringement defenses for claims 2–9, 11–14, or 16, and presented no element-by-element argument for invalidity."[11]

> If the court finds that the defenses were objectively unreasonable, in the sense that no "reasonable litigant could realistically expect" them to succeed, it should proceed to consider *Seagate*'s second requirement.  On that issue, we note that the objective baselessness of an infringer's defenses, assessed on the litigation record, may have a strong bearing on whether the "objectively-defined risk" of infringement "was either known or so obvious that it should have been known to the accused infringer."[12]

The Federal Circuit further directed that "[i]f the court determines on remand that IPC willfully infringed Aqua Shield's patent, it should reconsider its decision to deny enhanced damages and attorney's fees."[13]  With this background in mind, the Court considers the issues currently before it.

---

[10] *Id.*

[11] *Id.* (citations omitted).

[12] *Id.* (quoting *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1008 (Fed. Cir. 2012); *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007)).

[13] *Id.* at 775.

## II. DISCUSSION

A.    REASONABLE ROYALTY

Upon a finding of infringement, a patentee is entitled to "damages adequate to

compensate for the infringement, but in no event less than a reasonable royalty for the use made

of the invention by the infringer."[14]

"The [reasonable] royalty may be based upon an established royalty, if there is one, or if

not, upon the supposed result of hypothetical negotiations between the plaintiff and defendant."[15]

"The hypothetical negotiation seeks to determine the terms of the license agreement the parties

would have reached had they negotiated at arms length when infringement began."[16]

The following factors are considered in determining a reasonable royalty:

> 1. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.
> 2. The rates paid by the licensee for the use of other patents comparable to the patent in suit.
> 3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.
> 4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.
> 5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.
> 6. The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.
> 7. The duration of the patent and the term of the license.

---

[14] 35 U.S.C. § 284.

[15] *Rite-Hite Corp. v. Kelly Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995).

[16] *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012).

8. The established profitability of the product made under the patent; its commercial success; and its current popularity.

9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.[17]

The Court previously considered these factors and found that an 8% royalty rate would be appropriate. The parties do not appear to have appealed this determination and both parties apply the 8% royalty rate in their supplemental briefing. Therefore, the Court will continue to apply the 8% royalty rate.[18] The question then becomes what is the appropriate royalty base to which the royalty rate should be applied.[19]

---

[17] *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

[18] The Federal Circuit directed that the Court, in redetermining its royalty calculation, "should consider all relevant record evidence, including the advantages of the patented product, the ease and cost of designing around the claimed invention, and the relevance of IPC's actual profits to what IPC's expectations would have been in a hypothetical negotiation." *Aqua Shield*,

Plaintiff argues that the royalty rate should be applied to the selling price of the infringing devices. The evidence presented at trial supports this position. The parties' licensing negotiations focused on Defendants' selling price.[20] The testimony of Alex Stonkus and Jan Zitko, while admittedly less than clear, also supports the notions that royalty payments would be based on sales.[21]

Defendants argue that any reasonable royalty should be based on profits rather than sales. However, there is no evidence to support this argument. While the Court heard testimony about the parties' profits, there is no evidence suggesting that the hypothetical negotiation would have resulted in a royalty based upon profits. As on appeal, Defendants have "not pointed to any evidence . . . that a royalty should be a percentage of profits rather than sales."[22]

The evidence at trial showed that Defendants had sold $2.7 million worth of infringing products. Applying the 8% royalty rate to this amount, the Court finds that Plaintiff is entitled to a reasonable royalty of $216,000.

B.    WILLFULNESS

The Federal Circuit has held that "to establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood

---

774 F.3d at 773. Having considered these factors, the Court continues to find that an 8% royalty rate is reasonable.

[19] *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) ("A reasonable royalty may be a lump-sum payment not calculated on a per unit basis, but it may also be, and often is, a running payment that varies with the number of infringing units. In that event, it generally has two prongs: a royalty base and a royalty rate.").

[20] Trial Ex. CC.

[21] Trial Tr. 237–44, 302–04.

[22] *Aqua Shield*, 774 F.3d at 772.

that its actions constituted infringement of a valid patent."[23]  "If this threshold objective standard

is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by

the record developed in the infringement proceeding) was either known or so obvious that it

should have been known to the accused infringer."[24]

     As to the first requirement, the Federal Circuit held on appeal that this Court "should

focus on IPC's defenses as articulated during the infringement and invalidity proceedings."[25]

The court directed that "[i]f the court finds that the defenses were objectively unreasonable, in

the sense that no 'reasonable litigant could reasonably expect' them to succeed, it should proceed

to consider *Seagate*'s second requirement."[26]  On that issue, the Federal Circuit noted "that the

objective baselessness of an infringer's defenses, assessed on the litigation record, may have a

strong bearing on whether the 'objectively-defined risk' of infringement 'was either known or so

obvious that it should have been known to the accused infringer.'"[27]

     "Objective recklessness will not be found where the accused infringer has raised a

'substantial question' as to the validity or noninfringement of the patent."[28]  Thus, the Court

must consider whether Defendants' non-infringement and invalidity defenses were objectively

---

[23] *In re Seagate*, 497 F.3d at 1371.

[24] *Id.*

[25] *Aqua Shield*, 774 F.3d at 774.

[26] *Id.* (quoting *Bard*, 682 F.3d at 1008).

[27] *Id.* (quoting *In re Seagate*, 497 F.3d at 1371).

[28] *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 776 F.3d 837, 844 (Fed. Cir. 2015).

reasonable. Based on the record before it, the Court finds they were not as no "reasonable litigant could realistically expect"[29] those defenses to succeed "as articulated."[30]

During the proceedings related to infringement, Defendants only presented claims of non-infringement as to two of the sixteen claims asserted against them. And on only one claim—claim 15, which was later withdrawn by Plaintiff—did the Court find that issues of fact precluded summary judgment. Defendants' response to Plaintiff's motion regarding infringement showed a complete disregard of the respective burdens on summary judgment and Defendants took virtually no efforts to rebut the claims of infringement made by Plaintiff. No reasonable litigant could realistically expect such a strategy to succeed.

The same is true for Defendants' invalidity arguments. Defendants made only general arguments concerning anticipation and obviousness, but did not engage in any sort of rigorous analysis that would enable them to meet their burden on summary judgment. No reasonable litigant could realistically expect that strategy to succeed.

The Court must then proceed to *Seagate*'s second requirement: whether this objectively-defined risk was either known or so obvious that it should have been known to Defendants. The Federal Circuit noted that the objective baselessness of an infringer's defenses may have a strong bearing on this issue. As set forth above, Defendants' defenses, assessed on the litigation record, were objectively baseless. Thus, this supports the conclusion that Defendants either knew or should have known of this objectively-defined risk.

---

[29] *Bard*, 682 F.3d at 1008.

[30] *Aqua Shield*, 774 F.3d at 774.

AA11

Defendants continue to rely on the denial of Plaintiff's motion for preliminary injunction by the New York court in support of their argument that they did not willfully infringe. However, the Federal Circuit held that "[t]he denial of Aqua Shield's motion for a preliminary injunction is . . . a legally insufficient reason for determining that IPC did not willfully infringe."[31]

Defendants further contend that they had no expectation that their enclosures infringed until the Court issued its ruling on infringement. However, Plaintiff correctly points out that it sent Defendants a cease-and-desist letter in 2005, putting Defendants on notice of their possible infringement. Defendants also argue that once the Court issued its ruling on infringement, they instructed their factory to modify its products by fixing the end panels. In response to this argument, the Federal Circuit noted that "[q]uestions remain about whether that change was actually implemented or whether the resulting products avoided infringement."[32] Defendants provided no further evidence on these points. There is no evidence that this change was ever made, nor is there evidence suggesting that this change resulted in a non-infringing product. Rather, the evidence suggests that Defendants continued to engage in infringing activities after the Court issued its rulings on infringement and validity. The evidence shows that Defendants offered to sell, sold, and imported products that had detachable end panels.[33] Based upon this, the Court finds that Defendants willfully infringed Plaintiff's patent at the very least after the Court issued its rulings on infringement and invalidity.

---

[31] *Id.*

[32] *Id.*

[33] Tr. Ex. HH; Trial Tr. 266–73.

AA12

C.     ENHANCED DAMAGES

35 U.S.C. § 284 states in pertinent part that "the court may increase the damages up to three times the amount found or assessed."[34]  The Federal Circuit has held that "an award of enhanced damages requires a showing of willful infringement."[35]  "But, a finding of willfulness does not require an award of enhanced damages; it merely permits it."[36]  "[T]he decision to grant or deny enhanced damages remains firmly within the scope of the district court's reasoned discretion, informed by the totality of the circumstances."[37]

In exercising this discretion, the Court considers a number of factors, including:

> (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of defendant's misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm; and (9) whether defendant attempted to conceal its misconduct.[38]

Considering these factors, the Court finds that an award of enhanced damages is not appropriate here.  First, there is no evidence that Defendants deliberately copied Plaintiff's patented technology.  Defendants presented testimony that they and others were making similar products prior to the issuance of the patent.  Second, there is evidence that Defendants sought the

---

[34] 35 U.S.C. § 284.

[35] *In re Seagate*, 497 F.3d at 1368.

[36] *Id.*

[37] *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1274 (Fed. Cir. 1999).

[38] *Liquid Dynamics Corp. v. Vaughn Co., Inc.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006) (citing *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826–27 (Fed. Cir. 1992)).

advice of counsel and were informed that they could continue to sell their products.[39]  Third, while Defendants' behavior during litigation was certainly less than ideal, it was not so egregious as to warrant enhanced damages.  Fourth, there is little evidence concerning the size and financial condition of Defendants, other than the fact that they sold $2.7 million worth of infringing products.  Fifth, for substantially the same reasons set forth above, this was not a close case.  Sixth, Defendants' misconduct occurred over a significant duration, even after Plaintiff sent a cease-and-desist letter and the Court ruled on infringement and invalidity.  Seventh, Defendants allege that they attempted remedial action.  However, there is no evidence that Defendants actually took that action and, even if they did, it is questionable whether this resulted in a non-infringing product.  Eighth, there is no evidence that Defendants' actions were taken out of a desire to harm Plaintiff.  Finally, there is no evidence that Defendants attempted to conceal its misconduct.

Considering these factors and the totality of the circumstances, the Court declines to award enhanced damages.

D.   ATTORNEY'S FEES

35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."[40]  The Supreme Court has recently held "that an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the

---

[39] Trial Tr. 53–54, 87–88, 248–52.

[40] 35 U.S.C. § 285.

AA14

case) or the unreasonable manner in which the case was litigated."[41] This Court is to "determine whether a case is 'exceptional' in the case-by-case exercise of [its] discretion, considering the totality of the circumstances."[42]

For substantially the same reasons set forth above, the Court finds that this is not an exceptional case and, therefore, declines to award attorney's fees.

### III. CONCLUSION

Based upon the above, the Court awards Plaintiff a reasonable royalty in the amount of $216,000. Plaintiff's request for enhanced damages and attorney's fees is DENIED. The remaining portions of the Court's Judgment (Docket No. 179), including the permanent injunction, remain in effect.

The Clerk of the Court is directed to close this case forthwith.

DATED this 10th day of August, 2015.

BY THE COURT:

Ted Stewart
United States District Judge

---

[41] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014).
[42] *Id.*

AA15